UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY CHARLES DAVIS,

        Petitioner,

v.                           CASE NO. 2:07-CV-11900
                                JUDGE ARTHUR J. TARNOW
                                UNITED STATES DISTRICT JUDGE

BLAINE LAFLER,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING PETITIONER'S MOTION TO COMPEL [DE #18], MOTION OBJECTING TO FILING OF RESPONDENT'S RULE 5 MATERIALS [DE #22], MOTION TO CONDUCT/PRODUCE DISCOVERY [DE #17] AND MOTION TO AMEND PETITION [DE #16]

Petitioner Henry Charles Davis, presently confined at the Carson City

Correctional Facility in Carson City, Michigan, has filed a *pro se* petition for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2254.  Petitioner pled no contest in Wayne

County Circuit Court to multiple counts of criminal conduct in four related cases

involving an alleged interstate prostitution ring.  In Case No. 03-2568, Petitioner pled no

contest to kidnapping, M.C.L § 750.349; extortion, M.C.L §§ 750.213; enticing a female

under the age of sixteen, M.C.L § 750.13; pandering, M.C.L § 750.455; accepting the

earnings of a prostitute, M.C.L § 750.457; and transporting a female for prostitution,

M.C.L § 750.459.  In Case No. 03-2554, Petitioner pled no contest to two counts of first-

degree criminal sexual conduct, M.C.L § 750.520(B)(1)(c).  In Case No. 03-1583,

*Davis v Lafler*
07-11900

Petitioner pled no contest to two counts of pandering, M.C.L § 750.455; accepting the earnings of a prostitute, M.C.L § 750.457; and transporting a female for prostitution, M.C.L § 750.459.  In Case No. 03-1582, Petitioner pled no contest to two counts of first-degree criminal sexual conduct, M.C.L § 750.520(B)(1)(c), kidnapping, M.C.L § 750.349; and transporting a female for prostitution, M.C.L § 750.459.  In September 2003, Petitioner was convicted and sentenced to terms ranging from a minimum of six years eight months to ten years, to a maximum of eighteen years nine months to forty years.  Also pending before the Court are Petitioner's Motion to Compel (Dkt. No. 18), Motion to Conduct/Produce Discovery (Dkt. No. 17), Motion Objecting to Notice of Filing of Rule 5 Materials (Dkt. No. 22), and Motion to Amend/Correct Petition for Writ of Habeas Corpus (Dkt. No. 16).  For the reasons set forth below, the motions and the petition for a writ of habeas corpus are **DENIED**.

## I. BACKGROUND

In Case No. 03-2568, Petitioner was charged with: (1) conspiracy to commit kidnapping, (2) conspiracy to entice an underage female for immoral purposes, (3) conspiracy to transport a prostitute, (4) conspiracy to commit pandering, (5) conspiracy to accept the earnings of a prostitute, and (6) conspiracy to commit extortion.  In Case No. 03-2554, Petitioner was originally charged with: (1) kidnapping; (2) enticing an underage female for immoral purposes; (3) transporting a prostitute; (4) pandering; (5) accepting the earnings of a prostitute; and (6) conspiracy.  In Case No. 03-1583, Petitioner was charged with: (1) transporting a prostitute; (2) pandering; and (3)

2

*Davis v Lafler*
07-11900

accepting the earnings of a prostitute.  In 03-1582, Petitioner was charged with: (1)

first-degree criminal sexual conduct; (2) first-degree criminal sexual conduct; (3)

kidnapping; and (4) transporting a prostitute.  Charges of kidnapping and first-degree

criminal sexual conduct carry maximum sentences of life in prison.  Petitioner received

a substantial benefit under his plea agreement which provided for a maximum minimum

sentence of eighteen years nine months, and a maximum maximum sentence of forty

years.

During the August 23, 2003 plea hearing, the Court established a factual basis

for the plea.  In Case No. 03-2568, the preliminary examination showed that Alicia

Shabazz, Erica Cody, Sparkle Prater, Kim Franks, Cassandra Genes, Kathy Elkins,

Dominic Johnson, Tempest Walker, and other women were offered by Petitioner and his

associates positions to sell fake jewelry. The women who accepted his offer, many of

whom were under the age of sixteen, were held against their will.  After the women were

intimidated and beat, petitioner would transport the women across state lines and to

after-hours clubs, where they were forced to perform sex acts for money.  The women

who refused to prostitute themselves would be beaten or threatened.

Case No. 03-2554 involved victim Sparkle Prather, who was under the age of

sixteen when she came into contact with Petitioner. He had both fellatio and vaginal sex

with her against her will. She was held against her will and complied with Petitioner's

demands out of fear that Petitioner would beat her or have other girls beat her.

3

*Davis v Lafler*
07-11900

In Case No. 03-1583, the complainant was Stephanie Davis. She testified at the preliminary examination she was offered a job selling fake jewelry by Petitioner. She helped Petitioner bring other girls back from other states outside of Michigan.  Petitioner persuaded her to become a prostitute.  Plea Hrg. Tr., 19

In Case No. 03-1582, the complainant was Erica Cody. She testified at the preliminary examination that she was brought against her will from Ohio to Wisconsin to Detroit, Michigan.  Petitioner forced sexual intercourse on her, and was attempting to force her to become a prostitute.  Another witness testified at the preliminary examination that women were transported from different states to Detroit, Michigan by Petitioner for the purposes of dancing in an after-hours club and performing sex acts for money.

The sentencing hearing was held on September 15, 2003.  The state trial court sentenced Petitioner to eighteen years and nine months to forty years, on the applicable convictions as well as lesser concurrent terms.  After sentencing, Petitioner filed a Motion to Withdraw a Guilty Plea in all four cases which were heard and denied by the trial court on November 5, 2004. Petitioner filed applications for leave to appeal in the Michigan Court of Appeals in all four cases, which were denied for lack of merit.  *People v. Davis*, Nos. 259345, 259400, 259401, 259402 (Mich. Ct. App. April 18, 2005, May 2, 2005). The Michigan Supreme Court denied Petitioner's applications for leave to appeal, but remanded the case for modification of some of his sentences.  *People v. Davis,* 474 Mich. 944 (2005), *cert. den.* 547 U.S. 1116 (2006).

4

*Davis v Lafler*
07-11900

After re-sentencing, Petitioner filed another application for leave to appeal with the Michigan Court of Appeals, which was denied. *People v. Davis*, No. 275419 (Mich. Ct. App. May 4, 2007). Petitioner filed an application for leave to appeal to the Michigan Supreme Court. On February 19, 2008, the Michigan Supreme Court ordered that the cases be remanded again to the Wayne County Circuit Court to amend the sentences to reflect that Petitioner's sentences from his four separate cases were to run concurrently with one another, and the sentences were corrected.  *People v. Davis*, 744 N.W. 2d 135 (2008).

While his re-sentencing appeals were still pending, Petitioner filed the instant petition, in which he seeks habeas relief on the following grounds:

I.      The trial court abused its discretion in denying defendant-appellant's motion to withdraw his plea which was brought on the basis that it was involuntarily, unknowingly, and unintelligently given.

II.     The trial court abused its discretion in denying defendant-appellant's motion to withdraw his guilty plea which was brought on the basis of actual innocence.

III.    Defendant has been denied his constitutional right not to be placed in double jeopardy by his conviction of two counts of prostitution and pandering based on the same transaction.

IV.     A.   Because competency is an ongoing concern, Mr. Davis should be allowed to withdraw his guilty plea where there were strong indicators that he was not competent to have plead guilty at the time of the plea and defense counsel was ineffective for failing to request a forensic evaluation.

        B.   Request an independent psychiatric evaluation before recommending that defendant plead guilty.

5

Davis v Lafler
07-11900

Respondent initially moved to dismiss the petition because Petitioner failed to raise claims III and IV before the Michigan Court of Appeals prior to raising them in his application for leave to appeal in the Michigan Supreme Court. This Court denied the motion and ordered Respondent to file an answer addressing the merits of the petition. Opinion and Order, *Davis v. Lafler*, No. 2:07-CV-11900 (E.D. Mich. Apr. 21, 2008).

## II. STANDARD OF REVIEW

This court may not grant habeas relief on any claim adjudicated on the merits in state court unless the adjudication

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In analyzing whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings of the Supreme Court's decisions, not their dicta. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision on the merits is contrary to clearly established Supreme Court precedent only if the reasoning or the result of the decision contradicts that precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002). A federal court may grant habeas relief under the unreasonable application clause if the state court decision (a) identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies it to the facts, or (b) either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court

6

*Davis v Lafler*
07-11900

precedent to a new context. *Williams*, 529 U.S. at 407-08. To violate the unreasonable application clause, the state court application of Supreme Court precedent must have been "objectively unreasonable," not simply erroneous or incorrect. Id. at 409-11. State court factual findings are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

### III.  DISCUSSION

**A.    The trial court abused its discretion in denying defendant-appellant's motion to withdraw his plea which was brought on the basis that it was involuntarily, unknowingly, and unintelligently given.**

Petitioner's initial argument is that he is entitled to relief because the trial court denied his motion to withdraw his no contest pleas. According to Petitioner, the trial court erred for three reasons. First, his pleas were not knowing or voluntary because they were the result of coercion by his attorney. Second, the court should have allowed him to withdraw his pleas because he is actually innocent. Third, he lacked the mental competence to enter into the plea agreements and the trial court should have held a competency hearing. And in a related argument, Petitioner asserts that his trial counsel was constitutionally  ineffective for failing to request an independent psychiatric evaluation of his mental state.

Petitioner has no federal constitutional right or absolute right under state law to withdraw his guilty plea. *See Adams v. Burt,* 471 F. Supp. 2d 835, 843 (E.D. Mich. 2007) (internal citations omitted).  Therefore, unless the plea violated a

7

*Davis v Lafler*
07-11900

clearly-established constitutional right, whether to allow the withdrawal of a criminal

defendant's guilty plea is discretionary with the state trial court. *See Hoffman v. Jones,*

159 F. Supp. 2d 648, 655 (E.D. Mich. 2001).

"A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and

'intelligent.' " *Bousley v. United States,* 523 U.S. 614, 618 (1998) (citing *Brady v. United*

*States*, 397 U.S. 742, 748 (1970)).  A plea is voluntary if the accused understands the

nature of the charges against him and the constitutional protections that he is waiving.

*Henderson v. Morgan*, 426 U.S. 637, 645 n. 13 (1976). A plea is knowing and intelligent

if it is done "with sufficient awareness of the relevant circumstances and likely

consequences."  *Brady*, 397 U.S. at 748 (1970).  The state bears the burden of showing

that the petitioner's plea was voluntary, intelligent and knowing.  *Stumpf v. Mitchell*, 367

F.3d 594, 600 (6th Cir. 2004), *vacated in part on other grounds by Bradshaw v. Stumpf*,

545 U.S. 175 (2005).   When a petitioner brings a federal habeas petition challenging

his guilty plea, the state generally satisfies its burden by producing a transcript of the

state court proceedings showing that the plea was made voluntarily.  *Garcia v. Johnson*,

991 F. 2d 324, 326 (6th Cir. 1993).  The factual findings of a state court that the guilty

plea was properly made are generally accorded a presumption of correctness.  *Id.*

Petitioner must overcome a heavy burden if the federal court is to overturn these

findings by the state court. *Id.* at 328.  A federal court will uphold a state court guilty plea

if the circumstances demonstrate that the defendant understood the nature and

consequences of the charges and voluntarily chose to plead guilty.   *Hoffman,*159 F.

8

*Davis v Lafler*
07-11900

Supp. 2d at 655-56.  Additionally, a habeas petitioner bears a heavy burden of rebutting

the presumption that his or her guilty plea, as evidenced by the plea colloquy, is valid.

*See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005).

In this case, the trial court found that Petitioner's pleas were knowing and

voluntary during the hearing on his motion to withdraw his guilty pleas.  With respect to

each of the four cases, the trial court informed Petitioner of and made sure he

understood each charge filed against him and the maximum penalties they carried.  In

each case, the trial court asked Petitioner whether he was offering the plea freely and

voluntarily and in each case Petitioner answered yes.   In each case, the trial court

asked Petitioner whether his decision to plead was the result of any threats made

against him and in each case Petitioner answered no.[1]

### 1.  Coercion

Petitioner argues that because his trial counsel coerced him into pleading guilty,

his pleas were unknowing and involuntary.  The only evidence in the record to support

---

[1]In Case No. 03-2568, petitioner initially answered that he felt threatened by the risk of life in prison, which is the maximum sentence for kidnapping:

THE COURT: Did anybody threaten you in anyway to make you do this?

DEFENDANT DAVIS:  Life in prison, but –

THE COURT: Well, no.  I mean, it has to be what you want.  Did anybody threaten you?

DEFENDANT DAVIS: No, your Honor.

Plea Tr., 7.

9

*Davis v Lafler*
07-11900

Petitioner's argument is his own affidavit to this effect, which he attached to his Motion

to Withdraw a Guilty Plea ("Davis Aff.").  However, Petitioner stated on the record at his

plea hearing that he understood the nature of the charges against him, the

consequences of pleading, and that no threats had been made to get him to plead guilty

and that he was pleading freely and voluntarily.  Petitioner's bare claim that his counsel

coerced him into pleading guilty is insufficient to overcome the presumption of verity

which attaches to a petitioner's statements during the plea colloquy, in which he denied

that any force or threats had been used to get him to enter his plea. *See, e.g., Restucci*

*v. Spencer,* 249 F. Supp. 2d 33, 45-46 (D. Mass. 2003) (refusing to rely on petitioner's

self-serving affidavits stating the counsel and family members coerced him into pleading

guilty that flew in face of plea colloquy).  Based upon the record, it is clear that the

presumption of correctness accorded to the state trial court's findings that the plea was

proper should apply and that Petitioner's plea was voluntary and intelligent.  Petitioner

has not carried his "heavy burden" of overcoming this presumption.  Because

Petitioner's pleas were voluntary and knowing within the meaning of Supreme Court

precedent, the state court decisions on this issue were neither contrary to clearly

established federal law nor based upon an unreasonable determination of the facts in

light of the evidence presented in the state court proceeding.  Petitioner is therefore not

entitled to habeas relief on the basis of the state trial court's denial of his motion to

withdraw his guilty plea.

*Davis v Lafler*
07-11900

**B.    The trial court abused its discretion in denying defendant-appellant's motion to withdraw his guilty plea which was brought on the basis of actual innocence.**

Petitioner argues that the trial court should have allowed him to withdraw his no contest pleas because he is actually innocent.  Factual guilt or innocence is irrelevant to the question of whether a defendant's plea was voluntary.  *Gary v. Harry*, 2008 WL 4919502, *7 (E.D. Mich. Aug. 18, 2008) (citations omitted).  Indeed, the Supreme Court has explicitly held that a criminal defendant may constitutionally enter a guilty plea even while protesting his innocence or declining to admit his commission of the crime. See *North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970).  "Because a trial court may accept a guilty plea even when it is coupled with a claim of innocence, *a fortiori* a court is not required to permit withdrawal of that plea merely because a defendant belatedly asserts his innocence." *Gunn v. Kuhlman*, 479 F.Supp. 338, 344 (S.D.N.Y.1979) (footnotes omitted).

Moreover, an assertion of innocence by itself is insufficient to permit a defendant to withdraw his or her guilty plea.  *United States v. Jones*, 336 F.3d 245, 252 (3rd Cir.2003). "Assertions of innocence must be buttressed by facts in the record that support a claimed defense."  *Id.* (internal quotation omitted). The mere assertion of innocence, absent a substantial supporting record, is insufficient to overturn a guilty plea, even on direct appeal.  *Everard v. United States*, 102 F.3d 763, 766 (6th Cir.1996).  In the present case, Petitioner has wholly failed to point to any evidence to

11

*Davis v Lafler*
07-11900

support his assertion that he is innocent. Petitioner's conclusory allegation of innocence

is insufficient to permit him to withdraw his no contest plea. See *United States v. Clark,*

429 F.Supp. 89, 93 (W.D. Okla.1976).  Because Petitioner's pleas were voluntary and

knowing within the meaning of Supreme Court precedent, the state court decisions were

neither contrary to clearly established federal law nor based upon an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  Petitioner is therefore not entitled to habeas relief on his claim of

innocence.

> **C.    Defendant has been denied his constitutional
> right not to be placed in double jeopardy by his
> conviction of two counts of prostitution and
> pandering based on the same transaction.**

In Case Nos. 03-2568 and 03-1583, Petitioner was convicted, *inter alia*, for

Prostitution/Pandering in violation of M.C.L. § 750.455 and Accepting the Earning of a

Prostitute in violation of M.C.L. § 750.457.  He asserts that because the charges and

convictions arose from the same respective factual transactions in each case, they

violate the double jeopardy protection against multiple punishments for the same

offense.[2]

---

[2]The court notes that Petitioner received identical sentences for his pandering
and prostitution convictions of 13 years 4 months, which were ordered to be served
concurrently.  There is no jurisdictional bar to consideration of challenges to multiple
convictions even though concurrent sentences were imposed.  *Benton v. Maryland*, 396
U.S. 784, 791 (1969).

*Davis v Lafler*
07-11900

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V; *Monge v. California*, 524 U.S. 721, 727-28 (1998).  It protects against successive prosecutions for the same offense after acquittal or conviction and against multiple criminal punishments for the same offense.  *Monge*, 524 U.S. at 727-28.  The protection against multiple punishments "is designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature."  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  Thus, the "question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  *Id.* (citation omitted). "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Under the Double Jeopardy Clause, "when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent."  *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (citations omitted).

In the present case, the Michigan appellate courts did not issue an opinion explaining the basis for the rejection of this claim.  In *People v. Morey*, 461 Mich. 325 (1999), the defendant was convicted of pandering, M.C.L. § 750.455 and accepting the

13

*Davis v Lafler*
07-11900

earnings of a prostitute, M.C.L. § 750.457.  In *Morey*, the Michigan Supreme Court had

occasion to interpret the pandering statute.  It concluded that the statute requires more

than inducement of a woman to perform an act of prostitution.  *Morey*, 461 Mich. at 329.

Instead, it requires inducement on the part of a defendant to persuade or entice a

female person who has never before been a prostitute to become a prostitute.  *Id.*  The

court determined that pandering involved "activities that go beyond similar, but arguably

less harmful, [prostitution] activities proscribed elsewhere, suggesting a legislative intent

to punish more severely the more harmful [pandering] activities."  *Id.* at 336.  It

concluded that "the Legislature intended to punish more severely those who recruit

females into the practice of prostitution than those who merely facilitate a female's

existing decision to engage in . . . acts of prostitution.  *Id.* at 337.  Because pandering

requires proof that the women allegedly enticed by the defendant to become a prostitute

were not prostitutes before, and the evidence at trial only showed that the women were

enticed to perform acts of prostitution, the court upheld the reversal of the defendant's

conviction for pandering.  *Id.* at 338.  The defendant's conviction for accepting the

earnings of a prostitute was affirmed.  *Id.* at 326-27 n.1.

   *Morey* is not definitive on the question of whether a state legislature intended to

prescribe cumulative punishments for a single criminal incident but does suggest that

pandering is a more serious offense than prostitution.  However, under the *Blockburger*

test, pandering and accepting the earnings of a prostitute each have a unique element

that the other does not.  The crime of accepting the earnings of a prostitute presumes a

14

*Davis v Lafler*
07-11900

woman actively engaged in acts of prostitution and the act of taking her earnings.  In

contrast, the crime of pandering involves the act of inducing or enticing a woman who

never before performed acts of prostitution *to become* a prostitute.  Petitioner pled no

contest to both pandering and accepting the earnings of a prostitute.  Because each

crime requires proof of an element that the other does not, Petitioner's conviction on

both offenses did not violate the Double Jeopardy Clause and the state court decisions

therefore did not involve an unreasonable application of *Blockburger.* Accordingly,

Petitioner is not entitled to habeas relief on this claim.

> **D.    1.    Because competency is an ongoing concern, Mr.
> Davis should be allowed to withdraw his guilty
> plea where there were strong indicators that he
> was not competent to have plead guilty at the time
> of the plea and defense counsel was ineffective
> for failing to request a forensic evaluation.**

Petitioner argues that his no contest plea is invalid because there were strong

indications during the plea hearing that he was not mentally competent.  In light of these

indications, the trial court should have ordered a competency hearing.  Further, his

counsel should have requested an independent evaluation of his psychiatric state to

determine whether he was competent to plead no contest and counsel's failure to do so

resulted in the deprivation of his constitutional right to the effective assistance of

counsel.

15

*Davis v Lafler*
07-11900

### a. Trial Court Obligation to Hold Competency Hearing

A defendant may not be put to trial unless he or she has a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). The conviction or sentencing of a defendant who is legally incompetent at the time of the proceedings violates due process. *Drope v. Missouri*, 420 U.S. 162, 171-72 (1975). The competency standard for pleading guilty is the same as the competency for standing trial and is not a higher standard. *Godinez v. Moran*, 509 U.S. 389, 398 (1993).

Under the Due Process Clause, a trial court must hold a competency hearing whenever the evidence before it raises a "sufficient doubt" about the accused's mental competency to stand trial, or to enter a plea of no contest or a plea of guilty. *Doughty v. Grayson,* 397 F.Supp.2d 867, 875 (E.D. Mich. 2005) (citing *Drope,* 420 U.S. at 180; *Branscomb v. Norris*, 47 F.3d 258, 261 (8th Cir.1995)). The Supreme Court has not established the "quantum of evidence" necessary to raise "sufficient doubt." It has found several factors to be relevant to determining whether a hearing is necessary including 1) evidence of irrational behavior by the accused, 2) the accused's demeanor at trial, and 3) any prior medical opinion as to the mental competency of the accused to stand trial." *Doughty*, 397 F.Supp. 2d at 875 (citing *Drope,* 420 U.S. at 180; *Branscomb,* 47 F.3d at 261).

16

*Davis v Lafler*
07-11900

Petitioner does not allege that the court was aware of any irrational behavior on his part.  His demeanor during the plea hearing and the sentencing hearing was that of a rational individual.  During the plea hearing, whenever Petitioner spoke, he consistently spoke to the court in a respectful and polite manner, always referring to the judge as "Sir" or "your Honor."  He did not exhibit any aggressive or erratic let alone irrational behavior but only answered the judge's questions during the plea colloquy.  During the sentencing hearing, the trial court asked Petitioner whether he wanted to say anything:

> THE COURT: All Right.  Well, first of all, I have to ask Mr. Davis, is there anything you wish to say?
>
> DEFENDANT DAVIS: No, I'm fine your Honor.
>
> THE COURT: Oh, okay.  Thank you very much, Mr. Davis.
>
> DEFENDANT DAVIS: Thank you.
>
>                               *  *  *  *  *  *  *  *
>
> THE COURT: I just have to give him an opportunity to allocute, if he wishes to do so.
>
> MR. BARNETT [defense counsel]: Right.
>
> DEFENDANT DAVIS: Your Honor, I'd like to state, for the record, it was never my intention to harm anyone, or to discomfort anyone.  And I'd just like to say that I'm quite grieved if I've caused anyone any harm.
>
> THE COURT: Okay.  Thank you very much.
>
> DEFENDANT DAVIS: Thank you.

Sent. Tr., 5-6.

17

*Davis v Lafler*
07-11900

Petitioner points to an exchange during the plea hearing involving a request by

his attorney Marvin Barnett to mark his file "Medical" as the basis for his argument that

the trial court should have ordered a competency hearing and that his attorney should

have requested an independent psychological examination.

> MR. BARNETT: Your Honor, I'm requesting that the Court mark the file medical.  My client is in the medical portion of the hospital.  He's on suicide watch.  I'm asking that you mark the file medical, that they will provide a close –
>
> THE COURT: We'll do that.
>
> MS. LINDSEY (prosecutor): I — just for the record, I've had a conversation with the psychologist today.  And they're going to do their preliminary – they're going to finish their evaluation of him.
>
> THE COURT: Okay.
>
> MS. LINDSEY: Because they have started their evaluation of him.  And he's indicated to me that once all the paperwork is signed, they're going to send him back to general population, **because they have found nothing wrong**.
>
> **As a matter of fact, they found him to be malingering**.  And also right now, as it stands, Demesio Lee is on that floor, and they're writing up the reports now.  He has made several attempts to try to get to Demesio Lee. So, they're not going to keep him on that floor.
>
> MR. BARNETT: Now, you Honor —
>
> THE COURT: Well, actually there's no reason now, because Mr. Lee was not going to be a witness, and he's already pled.
>
> MR. BARNETT: Absolutely.
>
> THE COURT: So, there's no –
>
> MS. LINDSEY: What I'm telling you now, Judge, is they're in the process of writing up a – they called the court this morning and they contacted me.

18

Davis v Lafler
07-11900

They're on the -- in the process of writing up reports now.  And they have
to keep them separated.

THE COURT: Oh, I understand that.

MR. BARNETT: I'm asking he be --

THE COURT: Oh, I don't have any problem with that.

MR. BARNETT: Keep separated.  Not this general population thing, now.
I don't understand what that means.

THE COURT: We'll mark it medical.

MR. BARNETT: That's all I want.

MS. LINDSEY: Okay.

THE COURT: Sure, sure.  We can do that.

Plea Tr., 25-27 (emphasis supplied).

Contrary to Petitioner's assertions, the only reference in the record to medical
opinions on his competence indicated that in light of any concerns regarding Petitioner's
mental state he was found to be competent.  The request to mark his file "Medical" was
most likely made by defense counsel for purposes of determining a place of
confinement.  Moreover, Petitioner conceded that he was evaluated by a psychologist
prior to pleading guilty and found to be competent.  Defendant-Appellant's
Supplemental Brief on Appeal at 9-10, 12, *People v. Davis*, No. 259400 (Mich. Ct. App.
Feb. 25, 2005).  Defendant's mental competency to plea was simply never put in issue.

The facts of this case stand in stark contrast to those in *Drope*, *supra*, in which
there was a psychiatric evaluation that showed that the petitioner acted irrationally, was

*Davis v Lafler*
07-11900

markedly circumstantial and irrelevant in his speech and that diagnosed the petitioner

with borderline mental deficiency and chronic anxiety reaction with depression.  *Drope*,

420 U.S. at 175-76.  Even these conclusions, which were attached to a pre-trial motion

for a continuance, did <u>not</u> constitute sufficient indicia of incompetence to stand trial to

require further inquiry by the trial court.  *Id.*  What did raise "sufficient doubt" as to the

petitioner's competence in *Drope* was a pre-trial statement by defense counsel that

"defendant is not a person of sound mind and should have a further psychiatric

examination before the case should be forced to trial."  *Id.* at 177.  In the present case,

defense counsel made no analogous statement that would have raised "sufficient doubt"

as to Petitioner's competence.  *See Triggs v. Chrones*, 2007 WL 4410389, *4-7 (N.D.

Cal. Dec. 14, 2007) (fact that no one involved in the proceedings questioned petitioner's

competence entitled to substantial weight).

Because there was no evidence before the trial court that would have raised

doubt as to Petitioner's competence, the trial court was not obligated to hold a

competency hearing *sua sponte*.  As there was no due process violation caused by the

failure to hold a competency hearing, the state court decisions on this issue were

neither contrary to clearly established federal law nor based upon an unreasonable

determination of the facts in light of the evidence presented in the state court

proceeding.  Petitioner is therefore not entitled to habeas relief.

20

*Davis v Lafler*
07-11900

**D.    2.    Request an independent psychiatric
evaluation before recommending that
defendant plead guilty.**

Since there was and is no evidence of Petitioner being incompetent, the failure to

raise the issue was not error.

## IV.  Pending Motions

Because this Court has determined that Petitioner is not entitled to habeas relief,

Petitioner's Motion to Compel (Dkt. No. 18), Motion to Conduct/Produce Discovery (Dkt.

No. 17), and Motion Objecting to Notice of Filing of Rule 5 Materials (Dkt. No. 22) are

**DENIED** as moot.  In Petitioner's Motion to Amend/Correct Petition for Writ of Habeas

Corpus (Dkt. No. 16), he seeks to add a claim that he is entitled to withdraw his no

contest pleas because the trial court breached the plea agreement when it amended his

sentences to run consecutively instead of concurrently as agreed.  On the initial remand

from the Michigan Supreme Court, in Case No. 03-2568 *only,* the trial court provided

that Petitioner's sentences should run consecutively to those in Case Nos. 03-1583; 03-

1582 and 03-2554.  The error appears to be a typographical error, which was corrected

upon the second remand from the Michigan Supreme Court pursuant to that court's

February 19, 2008 order.  Petitioner's Motion to Amend/Correct Petition for Writ of

Habeas Corpus is **DENIED**.

21

*Davis v Lafler*
07-11900

## V.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas

corpus is **DISMISSED WITH PREJUDICE.**  It is further ORDERED that  Petitioner's

Motion to Compel (Dkt. No. 18), Motion to Conduct/Produce Discovery (Dkt. No. 17),

Motion Objecting to Notice of Filing of Rule 5 Materials (Dkt. No. 22), and Motion to

Amend/Correct Petition for Writ of Habeas Corpus (Dkt. No. 16) are **DENIED**.


S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  March 27, 2009


I hereby certify that a copy of the foregoing document was served upon parties/counsel
of record on March 27, 2009, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary